**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**WINCHESTER DIVISION**

| | | |
|---|---|---|
| **BRIDGESTONE AMERICAS TIRE OPERATIONS, INC., f/k/a BRIDGESTONE FIRESTONE NORTH AMERICAN TIRE, LLC** | ) ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **No. _____** |
| **AIR PRODUCTS AND CHEMICALS, INC.,** | ) ) ) | **JURY DEMAND** |
| **Defendant.** | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Bridgestone Americas Tire Operations, LLC ( "BATO"), respectfully files this Complaint for Declaratory Judgment against Defendant Air Products and Chemicals, Inc. ( "Air Products").

### INTRODUCTION

1.      This lawsuit relates to a written contract, titled "Hydrogen Supply Agreement" (the "Agreement"), that BATO[1] and Air Products entered into on July 1, 2007, which was amended effective February 15, 2018 ("the Amendment"), whereby Air Products agreed to provide, and BATO agreed to buy, hydrogen gas for use at BATO's tire manufacturing plant in Warren County, Tennessee ("the Warren Plant").  A copy of the Agreement is attached as <u>Exhibit A</u>, and a copy of the Amendment is attached as <u>Exhibit B</u>.  The Parties operated under the Agreement until September 2023.

---

[1]      The corporate entity listed in the Agreement is Bridgestone Firestone North American Tire, LLC.  That entity is now known as, and does business as, Bridgestone Americas Tire Operations, LLC.

2.     In October 2022, BATO provided notice to Air Products that it was going to expand and modernize its facilities at the Warren Plant.  At that time, BATO informed Air Products that the equipment being used to facilitate Air Products' provision of hydrogen would need to be relocated and updated, in order to meet BATO's needs relating to and following the expansion project.  The Agreement required that Air Products work with BATO to meet BATO's needs and to relocate the equipment in question.

3.     Instead of working towards a solution, Air Products delayed for a period of nearly four months before submitting a proposal addressing BATO's requests.  When it finally submitted a proposal, the request did not meet BATO's requirements and was not competitive in comparison to other bids that BATO had received for the same work. Moreover, Air Products has failed to provide a functional solution to supply hydrogen at the Warren Plant while construction is ongoing. Rather than working with BATO in good faith to remedy these issues, Air Products took the position that BATO was obligated to operate under the terms of the Parties' existing Agreement for a new five-year term, which commenced the day that Air Products finally submitted its bid.  It appears that Air Products purposefully delayed in providing a proposal in order to try to force BATO to continue operating under the terms of the existing Agreement, based upon its belief that BATO would not have the ability to terminate.

4.     BATO sent written notice that it was terminating the Agreement in September 2023.  BATO's termination was proper and justified because Air Products breached the Agreement by failing to timely and in good faith work with BATO to meet Air Products' obligations under the Agreement, and because Air Products also made clear, in its proposal, that it could not, or would not, agree to meet BATO's hydrogen needs relating to the expansion project.

2

5.     Air Products has maintained, in response to the notice of termination, that BATO had no right and no ability to terminate the Agreement.  Air Products contends that the Agreement remains in effect, and that BATO cannot purchase hydrogen services from any other supplier for the duration of the new five-year term that begin in February 2023.   Further, Air Products claims if the Agreement is terminated, it is entitled to millions of dollars in damages.

6.     Air Products' position ignores its own prior breaches and the plain language of the Agreement.  Most notably, the Agreement, which Air Products drafted, contains a limitation of damages provision that expressly contemplates and sets forth the remedies that are available in the event that either party fails to perform under the Agreement.  The provision precludes recovery, by either Party, of any indirect, special, incidental or consequential damages including, without limitation, loss of profit, loss of opportunity, or downtime, stemming from a failure to perform.

7.     For all of these reasons, there is a *bona fide* dispute between the Parties as to their rights and obligations under the Agreement.  Therefore, BATO has filed this action seeking a declaratory judgment as to the Parties' rights and obligations under the Agreement.  BATO respectfully requests that a judgment be entered in its favor, declaring that BATO properly terminated the Agreement, based upon Air Products' prior breaches and inability to perform, as required under the Agreement.  In the alternative, if the trier of fact concludes that BATO breached the agreement, BATO requests a declaratory judgment that, under the express language of the Agreement, Air Products is not entitled to any indirect, special, incidental or consequential damages including, without limitation, its loss of profit, loss of opportunity or downtime, associated with any alleged failure to perform.  Further, because BATO anticipates that Air Products intends to seek specific performance under the Agreement, BATO requests that the Court

3

render a judgment that Air Products is not entitled to the equitable remedy of specific performance because such relief is not permitted under the circumstances at issue.

## PARTIES, JURISDICTION, VENUE

8. Plaintiff, Bridgestone Americas Tire Operations, LLC, is a is a Delaware limited liability company, with a principal place of business located at 200 Fourth Avenue South, Suite 100, Nashville, Tennessee 37201-2256.

9. Defendant Air Products and Chemicals, Inc., is a Delaware corporation that maintains its principal place of business at 1940 Air Products Boulevard, Allentown, Pennsylvania 18106-5500. Air Products is registered to conduct business in the State of Tennessee, and may be served through its registered agent, C T Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919-5546.

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1332(b) because the contract at issue, the Agreement, contemplated that performance of the contract was to occur at BATO's facility in Warren County, Tennessee, which is located within the Eastern District of Tennessee.

## FACTS

12. BATO restates and adopts by reference the allegations of the above paragraphs as though fully set out herein.

13. BATO is a tire manufacturing company. BATO presently owns seven tire manufacturing facilities in North America, as well as international manufacturing and sales business units in other countries. Relevant to this case, one of BATO's tire manufacturing

4

facilities is a tire plant located in Warren County, Tennessee, which produces truck and bus radial tires.

14. Air Products is an American corporation that conducts business internationally. Air Products sells gases and chemicals for industrial uses.

15. BATO and Air Products entered into the original Agreement effective July 1, 2007.

16. Air Products drafted the Agreement, which expressly states that the Agreement, itself, is "proprietary" to Air Products.

17. The parties entered into the Amendment, which was titled "Amendment No. 1 to Hydrogen Supply Agreement Between Air Products and Chemicals, Inc. and Bridgestone Americas Tire Operations, LLC," on February 9, 2018. The Amendment was effective as of February 15, 2018.

18. Paragraph 1(a) of the Agreement provided that Air Products would sell to BATO, and that BATO would purchase from Air Products, BATO's "entire present and future purchase requirements for hydrogen . . . for [BATO's] fueling activities with respect to its hydrogen fuel cell powered vehicle deployment activities," which was defined as "Designated Use," at the "Designated Location," which was BATO's tire plant located at 725 Bridgestone Drive, Morrison, TN 37357.

19. Paragraph 1(c) of the Agreement provided that while the agreement was in effect, BATO could not "obtain Hydrogen by any method, purchase Hydrogen from others, purchase any other material in substitution for Hydrogen (including without limitation Hydrogen delivered by pipeline from the plant where it is produced, whether such plant is located at or near a Designated Location or elsewhere) for use at a Designated Location for the Designated Use in substitution for the Hydrogen [BATO] is obligated to purchase from Air Products hereunder."

5

20.     Paragraph 1(c) further provided that the Agreement would not "preclude [BATO] from purchasing and using electric or other non-hydrogen fueled batteries or vehicles at the Designated Location or elsewhere."

21.     The original Agreement provided, in paragraph 2(a), that its "term" would commence on July 1, 2017.

22.     In paragraph 4 of the Amendment, the Parties agreed that the term of the agreement would be extended until February 14, 2023.  That five-year term was referred to as the "Renewal Term."  The Amendment further provided that at the end of the Renewal Term, if BATO was "operating fuel cell-powered vehicles at a Designated Location," the Agreement would "continue in full force and effect for a second sixty (60) month term" from that date.  The second 60-month additional term was referred to as the "Subsequent Renewal Term," and, in combination, the "New Term."

23.     The original Agreement contained an "Early Termination" provision, in paragraph 2(b), that was subsequently replaced, in the Amendment, with the following language:

**Early Termination**. This Agreement may be terminated prior to its expiration as follows:

(i)     If this Agreement continues for the Subsequent Renewal Term in accordance with Section 2(a), and [BATO] no later than three (3) months prior to the start of the Subsequent Renewal Term presents to Air Products written evidence of a bona fide offer from another Hydrogen supplier of such supplier's offer to supply Hydrogen during the Subsequent Renewal Term of like quantity and quality at the time of such renewal and under similar terms and conditions at the Designated Location for the Designated Use to those set forth in this Agreement at the time of such renewal and such offer is for a purchase price at less than the Price then in effect under this Agreement, Air Products may either elect to meet such lower price or, if Buyer is unwilling to pay Air Products' then-effective Price, terminate this Agreement.

(ii)    If a party is in material breach of any material obligation hereunder and fails to remedy such breach (A) within twenty (20) days of notice of such breach

6

for a breach of obligation to pay money or (B) sixty (60) days of notice of breach of any other obligation, the non-breaching party may terminate this Agreement upon ten (10) days' prior written notice.

24.     The Early Termination provision in the Agreement does not purport to limit the parties' ability to terminate the Agreement on other grounds.  Nor is there any other provision in the Agreement or the Amendment that states that potential avenues for Early Termination described in Section 2(b) constitute the sole or exclusive grounds for early termination of the Agreement.  Rather, Section 2(b) includes the grounds upon which each Party was permitted to terminate the Agreement without potential liability to the other Party for damages.

25.     The Parties negotiated and included in the Agreement a separate "Limitation on Damages" provision that addressed the scope of the damages that could be recovered, by either party, based upon the other Party's performance or non-performance under the Agreement.  That provision provided, in relevant part:

> "*Neither party shall be liable for any indirect, special, incidental or consequential damages arising out of its performance or non-performance hereunder, including without limitation loss of profit, loss of opportunity or downtime.*"

(emphasis added).

26.     The Agreement included various requirements pertaining to the equipment that was to be used in connection with Air Products' provision of hydrogen to BATO.  Relevant to this action, paragraph 3(b) of the Agreement provided, in part:

> **Required Changes to Equipment**.  If significant changes in [BATO's] requirements, methods or locations of use, or changes in the construction or operation of [BATO's] facilities at any Designated Location warrant the relocation, replacement, installation or removal of any item of Equipment, including without limitation installation of alternative supply Equipment, Air Products <u>shall make such relocation after first consulting [BATO], and install or remove such item of equipment and charge [BATO] for the expenses incurred thereby</u>.

(emphasis added).

7

27.     Section 3(d) of the Agreement, as amended by the Amendment, further provided, in relevant part:

> **Removal of Equipment upon Termination**. Upon termination, cancellation or expiration of this Agreement, or upon any cessation of [BATO's] requirement hereunder, Air Products will, upon sixty (60) days' written notice, remove the applicable Equipment and the Monthly Charges shall cease effective upon the payment by [BATO] of Air Products' unamortized costs associated with the portion of the Term remaining at the time of such termination, cancellation or expiration, plus actual, out-of-pocket removal expenses.

28.     On or about October 20, 2022, BATO provided notice to Air Products that it was substantially expanding and updating its facilities at the Warren Plant.    At that time, BATO requested that Air Products provide a bid addressing BATO's hydrogen needs relating to and following the expansion of the Warren Plant.

29.     For nearly four months, Air Products failed to submit a bid to BATO, despite ongoing conversations with BATO representatives who made clear that BATO would need a bid in order to move forward with Air Products.  BATO again expressly requested that Air Products provide a quote in December 2022, with a deadline of December 12, 2022, which Air Products did not meet. Through January 2023, BATO had near-daily calls and/or emails with Air Products, seeking updates on the removal of Air Products existing equipment and status of the quote.

30.     Air Products chose to wait until February 13, 2023 – the date the Subsequent Renewal Term was set to begin under the existing Agreement – to finally provide a bid.  At that time, the bid submitted by Air Products did not address the short-term needs that BATO had identified relating to the expansion project.  Among other deficiencies, Air Products indicated to BATO that it would need 40 weeks to complete the relocation of its equipment, even though that work was a prerequisite for BATO to move forward with the expansion project.

31.     Notwithstanding its clear obligation to work with BATO in good faith to facilitate

significant changes in BATO's facilities at the Warren Plant, including relocating and updating equipment in accordance with those planned changes, Air Products chose to wait until February 13, 2023, to provide an incomplete proposal.

32. Upon information and belief, Air Products intentionally delayed in providing a proposal because it intended to try to run out the clock on the deadline for BATO to opt out of the existing Agreement, and then force BATO to operate under a subsequent five-year term under the terms set forth in that Agreement -- even though BATO informed Air Products, well before the deadline, that its needs had changed, substantially, as a result of the expansion project.

33. Air Products breached the Agreement by, among other things, acting in bad faith in its negotiations with BATO, attempting to bind BATO to a new term (and prohibit BATO from purchasing hydrogen from third parties) when Air Products could not fulfill BATO's requirements for the expansion, and failing to cooperate with BATO to meet BATO's needs relating to the expansion.

34. The bid that Air Products provided was not competitive in multiple respects, most importantly in terms of timing and equipment costs.

35. Notwithstanding Air Products' repeated failures to address the issues relating to the expansion, as BATO had requested, BATO continued to try to work with Air Products in good faith over the following months to reach a solution that would allow the parties to continue to work together.

36. Air Products never provided a workable solution that addressed BATO's needs relating to the expansion project. BATO determined, based upon the information provided by Air Products, that Air Products could not (or would not) meet BATO's requirements relating to the expansion project.

37.     On September 18, 2023, BATO sent written notice to Air Products that it was terminating the Agreement.  A copy of that letter ("the Termination Letter") is attached hereto as Exhibit C.  The stated basis for BATO's termination was that "Air Products was unable to meet BATO's Hydrogen Solutions requirements to support the expansion and modernization of the Warren Plant . . . ."  BATO also requested that Air Products remove its equipment from the Warren Plant, as required under the Agreement, so that BATO could move forward with the expansion project.  BATO requested that the equipment be removed within 60 days, as required under paragraph 3(d) of the Agreement.

38.     BATO's Termination Letter was preceded by verbal discussions between the Parties representatives in which BATO's representatives had conveyed that BATO intended to terminate the Agreement and was requesting that Air Products remove its equipment.

39.     Air Products has taken the position, since it received the Termination Letter, that BATO "ha[d] no right to unilaterally terminate the Agreement and cease purchasing product from Air Products," and that BATO's termination constituted a breach of the Agreement.

40.     Air Products has also argued that the Agreement remains in effect, and that BATO is not permitted to purchase hydrogen services from any other supplier for the duration of the additional five-year term that began in February 2023.

41.     Air Products has repeatedly informed BATO that, based upon its alleged improper termination of the Agreement, Air Products believes it is entitled to damages in the amount of the total value of its anticipated gross revenue over the remainder of the term of the Agreement. Notably, Air Products' damages demand is taken from its quote and anticipates the Warren Plant's future hydrogen needs to exceed BATO's estimated needs (as expressed in BATO's request for proposal) by nearly double.

10

42.     After BATO sent the Termination Letter, the Parties exchanged additional written correspondence and engaged in multiple verbal discussions addressing a potential resolution of the instant dispute.  The discussions were not productive, and the Parties were unable to reach a resolution.

43.     As of the date of this filing, BATO believes that Air Products continues to contend that the Agreement remains in effect; that it is owed in excess of $2 million in damages; and that BATO is not permitted to purchase hydrogen services from any other supplier through February 2028.

**FIRST CAUSE OF ACTION:**
**Declaratory Judgment**

44.     BATO restates and adopts by reference the allegations of the above paragraphs as though fully set out herein.

45.     An actual and justiciable controversy has arisen between BATO and Air Products with respect to the Agreement.

46.     Air Products contends that BATO had no right and no ability to terminate the Agreement, and that notwithstanding BATO's written notice of termination, the Agreement remains in effect.  BATO's position is that it properly terminated based upon Air Products' prior breaches of the Agreement and inability or refusal to perform its obligations under the Agreement.  Further, Air Products' contention that BATO could not terminate ignores the plain language of the Limitation on Damages provision, which contemplates and expressly provides for the remedies available to both Parties in the event that either Party fails to perform under the Agreement.

47.     Air Products also contends that based upon BATO's alleged breach of the Agreement, Air Products is entitled to millions of dollars in damages, despite the fact that such damages were expressly precluded under the Limitation on Damages provision.

11

48. For all of these reasons, and others described herein, there is a *bona fide* dispute between the Parties as to their rights and obligations under the Agreement.

49. Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, BATO respectfully turns to this Court for guidance and requests that this Court declare the rights and obligations of the Parties under the Agreement with respect to the matters in dispute. Such a resolution is also expressly permitted under both Tennessee state law and New York state law. *See* Tenn. Code Ann. § 29-14-103; NY CPLR § 3001, *et seq.*

50. Therefore, BATO respectfully requests a declaratory judgment from this Court that:

(a)     BATO properly terminated the Agreement when it sent the Termination Letter;

(b)     the following facts, independently and collectively, justified BATO's termination of the Agreement:

     i.     Air Products committed prior breaches of the Agreement by purposefully delaying in responding to BATO's request for a proposal addressing the expansion, including requests for a proposal relating to the relocation of the equipment;

     ii.     Air Products committed prior breaches of the Agreement by failing to meet its obligations under paragraph 3(b) of the Agreement, which required Air Products to relocate its equipment, after receiving notice from BATO, of the substantial pending changes in BATO's facilities and operations at the Warren Plant;

     iii.     Air Products committed prior breaches of the Agreement by failing to negotiate in good faith when BATO requested a proposal from Air Products that would address its needs relating to the planned expansion of the Warren Plant; and

12

iv.    BATO reasonably concluded, based upon information that Air Products had provided, that Air Products could not meet BATO's needs relating to its expansion project and, therefore, could not fulfill its obligations under the Agreement, thereby frustrating the purpose of the Agreement.

51.    In the alternative, if the trier of fact concludes that BATO breached the agreement when it sent the Termination Letter, or for any other reason, BATO requests a declaratory judgment from this Court that, under the Limitation on Damages provision that Air Products drafted, Air Products is not entitled to any indirect, special, incidental or consequential damages including, without limitation, its loss of profit, loss of opportunity, or downtime, stemming from BATO's termination of the Agreement and/or its alleged failure to perform under the Agreement.

52.    In addition, because BATO anticipates that Air Products intends to seek specific performance under the Agreement, BATO requests that the Court render a judgment that the Agreement does not preclude termination, and that Air Products is not entitled to the equitable remedy of specific performance because such relief is not permitted under the circumstances at issue.  Specifically, this case does not involve unique goods or goods that are difficult to value, and does not involve any interest in real estate.  Further, the Parties' Agreement specifically contemplates and provides for the remedies that are available in the event that a party fails to perform under the Agreement, and expressly limits the damages that can be recovered by either Party under such circumstances.

**WHEREFORE**, premises considered, BATO prays this Court grant the following relief:

(i)    Enter a declaratory judgment that BATO properly terminated the Agreement;

(ii)     Declare that Air Products committed prior breaches of the Agreement in multiple respects;

(iii)    Declare that, pursuant to the plain terms of the Agreement, neither Party shall be entitled to any indirect, special, incidental or consequential damages including, without limitation, its loss of profit, loss of opportunity or downtime, associated with a breach or other failure to perform under the Agreement;

(iv)    Declare that under applicable law, Air Products is not entitled to specific performance under the Agreement;

(v)     Empanel a jury of up to twelve (12) to hear this cause; and

(vi)    Grant BATO such other relief as the Court deems just and proper.

14

Dated: November 6, 2023  Respectfully Submitted,

**NEAL & HARWELL, PLC**

/s/  *J. Isaac Sanders*
J. Isaac Sanders (BPR # 29372)
Benjamin C. Aaron (BPR # 34118)
1201 Demonbreun Street, Suite 1000
Nashville, TN 37213
(615) 244-1713
isanders@nealharwell.com
baaron@nealharwell.com

*Counsel for Bridgestone Americas Tire
Operations, LLC*

15