UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| BRIDGESTONE AMERICAS TIRE OPERATIONS, INC., formerly known as Bridgestone Firestone North American Tire, LLC, | )<br>)<br>)<br>) |
| Plaintiff/Counter-Defendant, | )<br>) |
| v. | ) No. 4:23-cv-46-MJD |
| AIR PRODUCTS AND CHEMICALS, INC., | )<br>)<br>)<br>) |
| Defendant/ Counter-Plaintiff. | ) |

## **MEMORANDUM AND ORDER**

Before the Court are Plaintiff/Counter-Defendant Bridgestone Americas Tire Operations, LLC, f/k/a Bridgestone Firestone North American Tire, LLC ("BATO") and Defendant/Counter-Plaintiff Air Products and Chemicals, Inc.'s ("Air Products") motions *in limine* [Doc. 95; Doc. 96; Doc. 98]. The parties timely filed responses [Doc. 99 (Air Products' Response); Doc. 100 (BATO's Response)] and replies [Doc. 102 (Air Products' Reply); Doc. 103 (BATO's Reply)]. The motions are now ripe for review.

The Court notes at the outset that, despite voluminous briefing, the parties appear in agreement on a substantial portion of the universe of potential evidence in light of the Court's order on their cross-motions for summary judgment [Doc. 81 (the "Summary Judgment Order")], leaving only a handful of issues in dispute. The Court endeavors to resolve these remaining disputes or, at a minimum, narrow the issues for purpose of further discussion at the upcoming pretrial conference on May 12, 2025.

I.    **Evidence Pertaining to Liability**

The parties agree that the sole issue remaining in this case following the Summary Judgment Order is whether and to what extent Air Products is entitled to damages for BATO's breach of the Hydrogen Supply Agreement (the "Agreement") in November 2023, when BATO refused to purchase hydrogen from Air Products under the Agreement. Therefore, evidence of pre-breach conduct (*e.g.*, negotiations leading up to the Agreement, sufficiency of performance during the term of the Agreement, timeliness of the transmission of and response to BATO's request for proposal, etc.) is of no consequence to this action if offered solely for the purpose of establishing liability. The Court therefore **GRANTS** the parties' motions in part, and holds that evidence offered solely for the purpose of demonstrating conduct either party contends constituted a breach of the Agreement or the duty of good faith and fair dealing is excluded under Federal Rule of Evidence 402.

Air Products nonetheless asserts that it should be permitted to introduce such evidence for the purpose of demonstrating the bias and attacking the credibility of BATO's witnesses. Specifically, Air Products argues "[t]he evidence and testimony at issue demonstrates a corporate strategy to get out of the Agreement with Air Products and minimize [BATO]'s potential liability—and the specific employees involved in carrying out that plan." [Doc. 99 at Page ID # 1996]. This is merely the wolf of liability in the sheep's clothing of bias and credibility. If Air Products desires to argue BATO's witnesses are biased, it may do so through means that do not involve reliance on evidence so inextricably intertwined with the issue of liability. The Court finds such evidence is not relevant to damages and any probative value it has is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time.

2

Case 4:23-cv-00046-MJD    Document 106    Filed 05/07/25    Page 2 of 20    PageID #: 2059

Finally, BATO asks the Court exclude evidence offered to establish or suggest BATO's liability under Air Products' proposal for (1) a "long term system" on February 13, 2023; or (2) a "bridge" solution on March 21, 2023. BATO's request is consistent with the Summary Judgment Order, in which the Court held BATO is not liable under either proposal. The Court therefore **GRANTS** BATO's motion in this regard.

## II. Evidence of Market Price of Hydrogen

Air Products argues that evidence of the market price of hydrogen is irrelevant considering the Summary Judgment Order, in which the Court found Air Products "is not required to produce evidentiary support that damages under § 2-708(1)[1] are inadequate before it is entitled to pursue its lost profits under § 2-708(2)." [Doc. 81 at Page ID # 1750]. Although BATO objects to the Court's ruling, it concedes that under the Summary Judgment Order "any analysis involving the market price of hydrogen will not be relevant to the jury's evaluation of Air Products' claimed damage." [Doc. 100 at Page ID # 2009]. The Court therefore **GRANTS** in part Air Products' motion and excludes (1) all evidence regarding the market price of hydrogen; and (2) any argument that Air Products is required to present such evidence in order to recover damages.

---

[1] This section provides that "the measure of damages for non-acceptance or repudiation by the buyer is the difference between ***the market price*** at the time and place for tender and the unpaid contract price together with any incidental damages provided in this Article (Section 2-710), but less expenses saved in consequence of the buyer's breach." (Emphasis added). Air Products argues that it "is claiming damages pursuant to N.Y. U.C.C. § 2-708(2), which measures damages as 'the profit (including reasonable overhead) which the seller would have made from full performance from the buyer, together with any incidental damages provided in this Article (Section 2-710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale." [Doc. 96 at Page ID # 1900–01].

3

### III. Lay Testimony on Damages

The parties seemingly agree that none of BATO's witnesses have the personal knowledge to testify regarding Air Products' ultimate lost profits calculation. For example, Air Products argues that BATO's lay witnesses should not be permitted to testify regarding Air Products' damages because "[n]one of the witnesses possess personal knowledge of Air Products' relevant profit margins, the damages suffered by Air Products, or how to quantify them." [Doc. 96 at Page ID# 1903]. In response, BATO states, "none of BATO's employees possess personal knowledge regarding Air Products' profit margins, the damages suffered by Air Products that might be available under applicable law, or how to quantify them." [Doc. 100 at Page ID # 2013]. The Court therefore **GRANTS** Air Products' motion and excludes evidence generated or offered by BATO's witnesses for the purpose of establishing Air Products' ultimate lost profits on the ground that they lack personal knowledge under Federal Rule of Evidence 602.

The Court now turns to BATO's request that the Court exclude *all* evidence of BATO's lay witnesses' calculations that may relate to Air Products' damages:

> Similarly, BATO's internal efforts to evaluate how much money was still owed under the Contract when it was considering termination, or how much exposure BATO might have if Air Products sued, are also irrelevant to Air Products' claimed damages.
>
> ***
>
> To the extent that Air Products intends to introduce such proof as an admission regarding the amounts owed under the Contract, the evidence should still be excluded. BATO's employees are lay witnesses who are not qualified (and were not qualified) to opine as to the damages owed under the Contract under applicable law. Moreover, the calculations at issue plainly addressed gross revenues still potentially owed under the Contract—not lost profits. Therefore, the introduction of this evidence would serve only to confuse the jury, and should also be excluded under Fed. R. Evid. 403.

[Doc. 98 at Page ID # 1964 (internal citations omitted)].

The Court respectfully declines to exclude such evidence wholesale. Although BATO's witnesses may lack the personal knowledge required to opine on Air Products' ultimate lost profits calculations, they clearly possess knowledge of certain data required to perform those calculations, such as prior and projected hydrogen usage amounts at the Warren Plant and gross revenue paid to Air Products. As Air Products notes, such evidence is "directly relevant to lost profits because [BATO]'s hydrogen usage determines the volume ordered, which determines the revenue generated for purposes of calculating lost profits." [Doc. 99 at Page ID # 1991]. BATO seemingly concedes this point in its response to Air Products' motion:

> Air Products correctly states that BATO witnesses will be offering testimony regarding the revenue that BATO paid to Air Products in the past. BATO has also disclosed witnesses who have personal knowledge regarding BATO's business projections for the Warren Plant relating to its anticipated tire production figures and the corresponding volumes of hydrogen that BATO projects it will use over the duration of the time period that is at issue. A BATO employee, Matthew Bodnar, who has also been disclosed as an expert witness, has also prepared calculations regarding the anticipated revenue that Air Products could have reasonably expected to receive from BATO based upon those hydrogen usage projections. BATO witnesses also have personal knowledge regarding the prices that BATO has paid for hydrogen during the relevant time period from Air Products and from Plug Power. BATO does not read Air Products' Motion in Limine as seeking to exclude, at this time, any of that testimony or the referenced calculations. Therefore, BATO does not oppose this portion of Air Products' Motion.

[Doc. 100 at Page ID # 2014]. BATO's witnesses therefore undisputedly possess personal knowledge of such information, which is relevant to the ultimate determination of damages in this case.

5

## IV. Evidence Generated in Preparation for Compromise Discussions (Rule 408)

BATO contends exhibits 152, 161, 164, and 165[2] are all subject to exclusion under Federal Rule of Evidence 408, which provides:

> a) Prohibited Uses. Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> > (1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and
>
> > (2) conduct or a statement made during compromise negotiations about the claim—except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

[*See* Doc. 98 at Page ID # 1964, n.2 ("Trial exhibit 152 and any other memorandums prepared in anticipation of negotiations relating to BATO's termination should also be excluded under Rule 408 because it constitutes a calculation being prepared for settlement communication purposes, as it references a potential 'buyout.'"); *see also id.* at Page ID # 1968 n.3 ("As noted in BATO's objections to Air Products' Amended Exhibit List, Trial Exhibit Nos. 161, 162, 164, and 165 are also internal documents prepared in anticipation of and for the purposes of settlement discussions,

---

[2] Because application of Rule 408 is often fact intensive, the Court addresses these individual exhibits in this section. The other exhibits that appear disputed are addressed in the chart in Section VII, *supra*. In addition, the Court notes that BATO included Exhibit 162 in its Rule 408 argument. Exhibit 162 is an email from December 9, 2023, that appears to be a script for advising Air Products of BATO's decision to go another direction. It has no bearing on damages in this case and will be excluded pursuant to Rules 401 and 402. Accordingly, the Court will not address Exhibit 162 in its discussion of Rule 408.

and should be excluded pursuant to Fed. R. Civ. P. 408.")]. Air Products responds by noting that the documents cited by BATO "were created by [BATO's] employees before there was any actual dispute as to amounts owed under the Hydrogen Supply Agreement **and were not shared with Air Products for purposes of attempting to resolve that amount**." [Doc. 99 at Page ID # 1994 (emphasis in original)].

As stated in *Dow Chemical Co. and Subsidiaries v. United States*, 250 F. Supp. 2d 748, 804 (E.D. Mich. 2003), a case cited by Air Products:

> Rule 408 was intended to sweep broadly and encompasses the whole of the settlement evidence. . . . When the applicability of Rule 408 is a close call, the court should lean toward exclusion.
>
> However, Rule 408 excludes only evidence of conduct and statements made solely as part of the settlement negotiations, and not statements and conduct made at . . . meeting[s] which are unrelated to such compromise negotiations. Thus, the Court must find that the party seeking exclusion subjectively intended the statements to be part of negotiations toward compromise. Rule 408 also does not apply if the claim at issue is not in dispute. An actual lawsuit need not have been filed, but there must be at least an apparent difference of view between the parties . . . concerning the validity or amount of the claim.

(cleaned up and citations omitted).

Exhibits 152, 161, 164, and 165 all reflect BATO's internal discussions regarding dealing with Air Products in the fall-out of the parties' business relationship, focusing particularly on dollar amounts to offer Air Products and ways to justify the offers. Undoubtedly BATO subjectively intended the statements made in these exhibits to be part of a settlement strategy/negotiations with Air Products concerning the Agreement and BATO's decision to award the expanded hydrogen business to Plug Power. For example, Exhibit 164 contains the statements: "We don't feel we owe them any damages but would be willing to compromise on 1 years profit[,]" and "The reason I asked is I'm trying to figure out the math of what we are proposing. Basically, take the $110k

7

opener (including removal costs) and back into a formula." Exhibit 161 contains a series of "talking points" for BATO employees when interacting with Air Products, including: "Overall opening message. We want to come to a commercial resolution. I think we both agree this is a less taxing path, however, we are in disagreement on the price."

The fact that BATO did not ultimately provide these documents to Air Products does not remove them from the protections of Rule 408. *See Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 50 (3d Cir. 1995) (affirming exclusion of internal memoranda where they were "prepared as a basis for compromise negotiations, particularly because the memoranda appeared to be intended to assist in calculation of compromise figures discussed subsequently"); *see also EEOC v. UMB Bank Fin. Corp.*, 558 F.3d 784 791 (8th Cir. 2009) (citing cases and finding: "The spirit of the Rule, as recognized by several circuits and as set forth in the commentary to the Rule, supports the exclusion of certain work product, internal memos, and other materials created specifically for the purpose of conciliation, even if not communicated to the other party."); *Applebaum v. Target*, No. 11-cv-15035, 2015 WL 13036873, at *1 (E.D. Mich. Feb. 11, 2015) ("Rule 408 covers statements made as part of preparations for compromise negotiations, not only those made during the actual negotiations themselves." (citations omitted)).

The more difficult question is whether there was a disputed claim at the time BATO created these exhibits. "It is clear that litigation need not have actually commenced for Rule 408 to apply." *Infocision Mgmt. Corp. v. Foundation for Moral Law Inc.*, No. 5:08cv1342, 2011 WL 3022002, at *5 (N.D. Ohio July 22, 2011). Nevertheless, "Rule 408 has been interpreted as applicable to an actual dispute, or at least an apparent difference of view between the parties concerning the validity or amount of a claim." *Affiliated Mfrs.*, 56 F.3d at 526 (citations omitted). While it is clear *now*

8

that the parties dispute the validity and amount of Air Products' claim for damages under the Agreement, the parties do not adequately address when the "difference of view" became apparent. *Id.* BATO seemingly argues that Air Products' claim was "in dispute" because liability for breach of the Agreement had not yet been decided [*see* Doc. 103 at Page ID # 2046], but that does not address the more pertinent question of when the dispute *began*.

On one hand, the exhibits on their face suggest the existence of a dispute—at least from BATO's perspective—at the time the documents were generated.[3] On the other hand, the exhibits were arguably prepared by BATO employees as part of a business-decision process, as opposed to having been created by outside accountants or attorneys with an eye toward litigation. *See Alpex Computer Corp. v. Nintendo Co., Ltd.*, 770 F. Supp. 161, 164–65 (S.D.N.Y. 1991) (noting that "participation of outside counsel in negotiations is a relevant factor in determining whether a dispute existed for Rule 408 purposes"). In either event, the exhibits themselves do not address two issues the Court finds salient to resolving this evidentiary dispute: (1) whether and to what extent Air Products was aware of what BATO considered to be a "difference of view;" and (2) whether both parties to a dispute must expressly state their different viewpoints before the protections of Rule 408 kick in.

---

[3] This observation distinguishes this case from *Walsh v. First UNUM Life Ins. Co.*, 982 F. Supp. 929, 931 (W.D.N.Y. 1997), on which Air Products relies in its briefing. In *Walsh*, the disputed communication "merely offered to change the form of plaintiff's disability payment from monthly to lump sum." *Id.* at 931–32. The court emphasized the communication "did not dispute the merit of plaintiff's claim," which would have triggered the protections of Rule 408. *Id.*

Accordingly, the Court will reserve ruling on BATO's motion to the extent it relies on Rule 408. The parties should be prepared to address Rule 408 as applied to Exhibits 152, 161, 164, and 165 at the final pretrial conference, in light of the foregoing discussion.[4]

V.      **Evidence of Link between Percentage of Business and Damages**

Air Products asserts BATO should not be able to argue Air Products is not entitled to damages because BATO is only a small portion of Air Products' hydrogen sales [Doc. 96 at Page ID # 1904]. BATO, in turn, says it has no intent of making such an argument. [Doc. 100 at Page ID # 2015]. The Court therefore **GRANTS** Air Products' motion in this regard.

VI.     **Evidence of Amounts BATO Paid to Plug Power**

The gravamen of the remaining dispute in this case is what Air Products refers to in its motion as "the negotiated contract price" and "the deal it obtained." [Doc. 96 at Page ID # 1901, 1902]. Air Products therefore asks the Court to exclude evidence regarding the price that BATO is paying Plug Power for hydrogen. BATO concedes that its pricing arrangement with Plug Power is not directly relevant to Air Products' damages claim, but objects to the blanket exclusion of information regarding payments to Plug Power because (1) such evidence reflects BATO's hydrogen usage during a period for which Air Product seeks damages; and (2) such evidence goes

---

[4] Given how much the parties appear to agree upon, they might consider dispensing with these exhibits and dedicating their time toward crafting stipulations regarding hydrogen usage and revenue projections. [*See* Doc. 103 at Page ID # 2042 ("BATO agrees its employees can testify regarding the revenue that Air Products earned while the Contract was in effect, and regarding the revenue that it could have expected to earn going forward."); Doc. 99 at Page ID # 1992 ("Air Products agrees that Bridgestone's witnesses have no knowledge of Air Products' profit margins and cannot competently testify to them."); Doc. 103 at Page ID # 2043 ("Air Products should not be permitted to introduce documents evidencing efforts by lay BATO employees to assess the amount of damages or lost profits Air Products might be owed if BATO terminated the Contract[.]")].

to the dispute about "all-in" pricing vs. "molecule" pricing. [Doc. 100 at Page ID # 2010–11].

As to BATO's first concern, the Court finds there are sufficient alternatives to proving hydrogen usage that do not require disclosure of the price BATO is paying Plug Power, including, but not limited to, stipulating to such amounts. As to BATO's second concern, the Court finds the amounts BATO is paying Plug Power have no bearing on the propriety of the "all-in" pricing Air Products contends BATO agreed to. Said otherwise, what BATO has contractually agreed to pay Plug Power since 2023 has no relevance to what BATO previously agreed to pay Air Products under the Agreement. And any probative value such information may have is substantially outweighed by the danger of confusing the issue[5] the jury will be charged with resolving—whether and to what extent BATO owes Air Products damages for its breach of the Agreement.

The Court therefore **GRANTS** Air Products motion to exclude evidence of amounts BATO has paid Plug Power.

---

[5] The Court is specifically concerned about the danger of confusion considering not only the Summary Judgment Order's disposition of liability, but also the Court's ruling in this order that evidence of market price is irrelevant. Take, for example, BATO's argument that it seeks to introduce this evidence to demonstrate Air Products' "failure to distinguish between the price BATO was paying for hydrogen and the price that BATO was paying for hydrogen plus equipment-related charges, and the obvious disparity between the prices that hydrogen suppliers charge for hydrogen and the combined 'molecule' price that BATO was paying." [Doc. 100 at Page ID # 2013]. If the Court has already determined BATO liable as a matter of law, and BATO concedes market price is irrelevant, for what legitimate purpose would the jury need Plug Power's pricing model? Permitting such evidence in light of those rulings would allow BATO to retroactively attack the validity of Air Products' "all-in pricing" and more likely than not lead the jury into the territory of issues that have already been resolved.

## VII. Specific Documents Referenced in the Parties' Motions

Having addressed broadly the issues raised in the parties' briefing, the Court turns now to specific exhibits at issue. As set forth above in Section IV, *supra*, the Court **RESERVES RULING** on BATO's motion as to Exhibits 152, 161, 164, and 165. The parties should be prepared to address these exhibits and Rule 408 at the final pretrial conference.

The Court further **RESERVES RULING** on Air Products' motion as to Exhibits 134 and 135. Air Products moves to exclude these exhibits on the grounds that they were not timely produced during the discovery period and Air Products was not able to question BATO's witnesses about them during depositions. According to Air Products, "[i]t is also not clear who has personal knowledge to introduce these documents at trial under Federal Rule of Evidence 602," because "[n]either corporate representative was able to describe the origin of Bridgestone's projections of its tire production, which drives its hydrogen demand." [Doc. 102 at Page ID # 2033]. Elsewhere in the briefing on the motions in limine, however, Air Products takes the position that BATO's projections are admissible. [*See* Doc. 99 at Page ID # 1989–93]. Accordingly, the Court will require BATO to lay a proper foundation for any witness's knowledge of Exhibits 134 and 135. The Court will likewise require BATO to address why Exhibits 134 and 135 were not timely produced during the discovery period. To the extent they were not previously produced because they reflect updated, post-discovery information regarding actual or projected hydrogen usage, the Court will consider proposals from the parties for mitigating any prejudice to Air Products caused by the late disclosure.

As to the remaining disputed exhibits, the motions are **GRANTED IN PART AND DENIED IN PART** as set forth in the following chart. For each exhibit marked "Granted," the

parties are instructed to bring the exhibit to the Court's attention outside the presence of the jury before offering it into evidence.

| Exhibit | Ruling | Basis |
|---|---|---|
| 6 | Granted | Exhibit 6 references providing Plug Power with usage numbers but does not contain any actual projections. The Court therefore finds the document irrelevant in accordance with Rules 401 and 402. |
| 7 | Denied | Exhibit 7 is an October 2022 email chain that contains, among other things, a representation from BATO's Purchasing Manager that "[w]e are adding daily capacity from 9400 per day to 12400 per day. The 30% increase will result in the much more hydrogen." The Court finds the representation is relevant under Rules 401 and 402. To the extent the parties find the remainder of the document objectionable, they may either: (1) redact the objectionable portions; or (2) stipulate that BATO's Purchasing Manager made the relevant representation in lieu of admitting the document itself. |
| 8 | Granted | Exhibit 8 is an October 2022 email to Power regarding a "time constraint" relative to hydrogen. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. |
| 9 | Granted | Exhibit 9 is an October 2022 email chain and proposal from Plug Power that contains "molecule price" of $6.18/kg. Consistent with Section VI of this order, *supra*, the amounts BATO paid Plug Power are irrelevant under Rules 401 and 402. Further, the probative value of such amounts (if any) is substantially outweighed by the danger of confusing the jury under Rule 403. |
| 11 | Denied | Exhibit 11, BATO's Commodity Manager represented both the "current state" of usage and projections for future usage at the Warren Plant. The Court finds this representation relevant under Rules 401 and 402. |
| 13 | Granted | Exhibit 13 contains an internal discussion at BATO regarding negotiations with Plug Power and how "we need our legal team to get us out of the Air Products jail position." Consistent with Section I of this order, *supra*, the Court finds this document irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |
| 15 | Granted | Exhibit 15 is an email chain from January 2023 in which BATO internally discusses its desire to get out of the Agreement. Consistent with Section I of this order, *supra*, the Court finds this document irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |

| Exhibit | Ruling | Basis |
|---|---|---|
| 16 | Granted | Exhibit 16 is an email exchange from January 2023 discussing Air Products' performance and general comparisons to Plug Power's pricing. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |
| 17 | Granted | Exhibit 17 is an email chain from February 2023 that discusses the sufficiency of Air Products' proposal and the reasonableness of BATO's conduct. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |
| 18 | Denied | Exhibit 18 is a February 2023 email in which Air Products is internally providing details for BATO's project through February 2028. The document on its face appears pertinent to the issue of damages and the Court therefore finds it relevant under Rules 401 and 402. |
| 22 | Denied | Exhibit 22 appears to be Air Products' February 2023 proposal, which was based in part on and contains projections regarding future hydrogen usage at the Warren Plant. The Court has already ruled BATO is not liable under the proposal, but the representations regarding projected use are pertinent to the issue of damages. The Court therefore finds the document relevant under Rules 401 and 402. |
| 25 | Granted | Exhibit 25 is a March 2023 email confirming that "Plug Power has been awarded the business and Air Products is out." The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |
| 26 | Granted | Exhibit 26 is a March 2023 email chain containing discussion about keeping secret from Air Products the decision to transition to Plug Power. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |
| 27 | Granted | Exhibit 27 is an April 2023 email chain containing further discussion about keeping secret from Air Products the decision to transition to Plug Power. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |

| Exhibit | Ruling | Basis |
|---|---|---|
| 28 | Granted | Exhibit 28 is a May 2023 email chain containing further discussion about not notifying Air Products of the decision to transition to Plug Power. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |
| 29 | Granted | Exhibit 29 is a May 2023 email chain in which BATO tells Air Products it will provide any updates as soon as possible but had no other news to share. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |
| 30 | Granted | Exhibit 30 is a May 2023 email that appears mostly duplicative of Exhibit 29. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |
| 31 | Granted | Exhibit 31 is an August 2023 email chain containing BATO's internal discussions about notifying Air Products of the decision to move to Plug Power, as well as an acknowledgement of upcoming breach. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |
| 32 | Granted | Exhibit 32 is BATO's September 2023 notice of termination of the Agreement. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |
| 33 | Granted | Exhibit 33 is a September 2023 email exchange containing and discussing Air Products' response to BATO's termination notice. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |
| 34 | Granted | Exhibit 34 is BATO's reply to Air Products' response to the termination letter. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |

| Exhibit | Ruling | Basis |
|---|---|---|
| 35 | Granted | Exhibit 35 is a September 2023 email exchange regarding BATO's termination notice and Air Products' response. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |
| 57 | Denied | Exhibit 57 is schematic diagram of the equipment Air Products installed and used to deliver hydrogen for BATO's use at the Warren Plant. John O'Bryan's deposition testimony appears to have some bearing on the cost of maintaining the equipment, which may be relevant to damages under Rule 401, as even Air Products concedes BATO "may explore" costs of "equipment or maintenance" as they relate to profit. BATO argues Exhibit 57 is "necessary" for the presentation of Mr. O'Bryan's testimony. Pretrial exclusion of this exhibit is simply not justified on the current record; however, the Court will not permit lengthy argument or testimony regarding Exhibit 57 and the technical details regarding the equipment, and Air Products may renew its objection if such occurs at trial. |
| 70 | Granted | Exhibit 70 is an email chain wherein Air Products employees discuss the molecule price for hydrogen. The exhibit relates, at least in part, to BATO's argument that Air Products acted in bad faith, which the Court has already determined is not relevant. Further, there is no suggestion that the "modest" reduction in the molecule price is related in any way to costs (and therefore to Air Products' profits). It is undisputed Air Products relied on an "all-in" pricing model prior to BATO's breach. |
| 134 | Reserve | Exhibit 134 is a chart reflecting hydrogen use since BATO stopped purchasing hydrogen from Air Products. As set forth in the paragraphs immediately preceding this chart, the Court reserves ruling on this in light of the need for further information. |
| 135 | Reserve | Exhibit 135 is a chart reflecting hydrogen use since BATO stopped purchasing hydrogen from Air Products. As set forth in the paragraphs immediately preceding this chart, the Court reserves ruling on this in light of the need for further information. |
| 147 | Granted | Exhibit 147 is an August 2020 PowerPoint overview of the history of the Agreement, current equipment, and a "matrix of alternatives" to Air Products. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |

| Exhibit | Ruling | Basis |
|---|---|---|
| 148 | Denied | Exhibit 148 is a November 2022 email chain containing representations regarding Air Products charges as of the last bill and BATO's "current average usage" at the Warren Plant. The Court finds these representations relevant under Rules 401 and 402. To the extent the parties find the remainder of the document objectionable, they may either: (1) redact the objectionable portions; or (2) stipulate that BATO made the relevant representation in lieu of admitting the document itself. |
| 150 | Granted | Exhibit 150 is a January 2023 email containing statements regarding BATO's desire to get out of the Agreement. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |
| 151 | Denied | Exhibit 151 is a December 2022 email chain containing BATO's representations about Air Products current rate, as well as BATO's projection that "[i]n 3 years, we should be at 32% more hydrogen usage." It also contains a chart spanning 2023–2028, which is the relevant period for damages. The Court finds these representations relevant under Rules 401 and 402. To the extent the parties find the remainder of the document objectionable, they may either: (1) redact the objectionable portions; or (2) stipulate that BATO made the relevant representations in lieu of admitting the document itself. |
| 152 | Reserve | Exhibit 152 is a February 2023 email containing BATO's Lead Sourcing Manager's "logical assumption on the 5 year cost of hydrogen with AP if we asked for a buyout of $1.7M ($350k per year x 5). I went on the high side." As discussed in Section IV, *supra*, the Court reserves ruling on this in light of the need for further information to analyze the document under Rule 408. |
| 153 | Granted | This chart, on its own, does not contain any information bearing on damages, including, but not limited to, Air Products' pricing or BATO's usage. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |
| 154 | Granted | Exhibit 154 is a February 2023 PowerPoint slide containing the benefits and detriments of moving forward with Plug Power instead of Air Products. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |

| Exhibit | Ruling | Basis |
|---|---|---|
| 155 | Granted | Exhibit 155 is a February 2023 email chain seeking advice on interpreting the Agreement. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |
| 156 | Granted | Exhibit 156 is a February 2023 email chain discussing the obstacle of "advising the incumbent [Air Products] of the potential loss of business mid contract." The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |
| 157 | Granted | Exhibit 157 is a February 2023 email chain containing a discussion between the parties about responding to Air Products' proposal for the expansion. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |
| 158 | Granted | Exhibit 158 is an email acknowledging Plug Power's selection for the project and advising of the need to keep such selection secret from Air Products. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |
| 160 | Granted | Exhibit 160 is a May 2023 email containing discussions about whether and when to advise Air Products that BATO elected to move forward with Plug Power. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |
| 161 | Reserve | Exhibit 161 is an undated document that appears to have been prepared by BATO to address issues and "probabl[e] messages from A[ir] P[roducts]" resulting from BATO's decision to move forward with Plug Power. As discussed in Section IV, *supra*, the Court reserves ruling on this in light of the need for further information to analyze the document under Rule 408. |
| 162 | Granted | Exhibit 162 is an email containing what appears to be a script for advising Air Products of BATO's decision to go another direction. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |

| Exhibit | Ruling | Basis |
|---|---|---|
| 163 | Granted | Exhibit 163 is an October 2023 email containing bullet points for a call to discuss the agreement with Plug Power. The document has no bearing on damages and is therefore irrelevant under Rules 401 and 402. Further, the probative value of the document (if any) is substantially outweighed by the danger of unfair prejudice, confusion of the issues, undue delay, and wasting time under Rule 403. |
| 164 | Reserve | Exhibit 164 is a series of what appear to be October 2023 text messages between BATO's representatives discussing, *inter alia*, estimates as to what BATO will spend with Air Products for the balance of the Agreement. As discussed in Section IV, *supra*, the Court reserves ruling on this in light of the need for further information to analyze the document under Rule 408. |
| 165 | Reserve | Exhibit 165 is an undated email referencing BATO's use of a $16.5/kg amount to reach what "really does align to [Eric Byers'] prior high level numbers that I backed into based on todays' usage and projections." As discussed in Section IV, *supra*, the Court reserves ruling on this in light of the need for further information to analyze the document under Rule 408. |

## VIII. Conclusion

For the reasons set forth herein, the Court hereby **GRANTS IN PART, DENIES IN PART, AND RESERVES RULING IN PART** the parties' respective motions in limine [Doc. 95; Doc. 98]. The Court will require the parties to submit amended deposition designations on or before **MAY 19, 2025.** <u>Any such amended deposition designations **SHALL** take into account the Court's rulings herein and any additional rulings made during the final pretrial conference.</u> If the parties believe the Court has omitted any specific exhibits that remain in dispute considering the Court's rulings, they shall identify such documents by email to the Court prior to the final pretrial conference. The Court will discuss further with the parties any such omitted exhibits or unresolved evidentiary issues and further clarify its rulings as necessary during the upcoming pretrial conference on May 12, 2025.

SO ORDERED.

ENTER:

19

s/ _MDDA_ (signature)
MIKE DUMITRU
UNITED STATES MAGISTRATE JUDGE

20